**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JACQUELYN SUE MARSHALL,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>Defendant. | NO. EDCV 10-01668 AGR<br><br>**MEMORANDUM OPINION AND ORDER** |

Jacquelyn Sue Marshall filed this action on November 4, 2010. (Dkt. No. 3.) Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on December 3 and 7, 2010. (Dkt. Nos. 8, 9.) On June 20, 2011, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. (Dkt. No. 16.) The court has taken the matter under submission without oral argument. The decision of the Commissioner is affirmed.

///
///
///
///
///

## I.
## PROCEDURAL BACKGROUND

On September 25, 2007, Marshall filed an application for disability insurance benefits and supplemental security income benefits. Administrative Record ("AR") 10. In both applications, Marshall alleged an onset date of January 1, 2007. AR 108-16. The applications were denied initially and upon reconsideration. AR 54-58, 63-68. On October 10, 2008, Marshall requested a hearing before an Administrative Law Judge ("ALJ"). AR 69. The ALJ conducted a hearing on December 9, 2009, at which Marshall and a vocational expert testified. AR 21-49. On March 17, 2010, the ALJ issued a decision denying benefits. AR 7-20. On September 19, 2010, the Appeals Council denied the request for review. AR 1-3. This action followed.

## II.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

### B. ALJ's Findings

The ALJ found that Marshall had the severe impairment of obesity. AR 12. Marshall's impairment neither met nor was medically equivalent to a listed impairment. AR 13. Marshall had the residual functional capacity ("RFC") to perform light work except that she can lift and carry 20 pounds occasionally and 10 pounds frequently. *Id*. In an 8-hour workday, she could stand and walk for 2 hours and sit for 6 hours. *Id*. She could not work at unprotected heights or in extreme temperatures. *Id*. Marshall was capable of performing past relevant work as an optical laboratory technician. AR 19.

### C. Credibility

Marshall contends the ALJ erred in finding her symptom testimony not credible.

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Marshall's "medically determinable

impairments could reasonable be expected to cause the alleged symptoms." AR 15.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility determination, the ALJ 'must specifically identify what testimony is credible and what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide specific, cogent reasons for the disbelief." *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citations and quotation marks omitted). "The ALJ must cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and quotation marks omitted).

In weighing credibility, the ALJ may consider factors including: the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (*e.g.*, movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13)[1] (quotation marks omitted). The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a

///

---

[1] "Social Security Rulings do not have the force of law. Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

4

claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. *Thomas,* 278 F.3d at 958-59.

The ALJ made no finding of malingering. The ALJ took Marshall's subjective complaints into account in limiting her to light work. AR 18. However, the ALJ found that Marshall's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment. AR 15. The ALJ relied on: (1) lack of objective medial evidence supporting Marshall's claims; (2) conservative treatment; and (3) consideration of Marshall's daily activities.[2] AR 14-18.

### 1. Objective Medical Evidence

Although lack of objective medical evidence supporting the degree of limitation "cannot form the sole basis for discounting pain testimony," it is a factor that an ALJ may consider in assessing credibility. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

With respect to Marshall's mental condition, the ALJ acknowledged that Marshall was involuntarily hospitalized on August 27, 2007 after expressing suicidal ideation. AR 16, 259-71. The ALJ found that this episode occurred during a 3-week period when she had admittedly stopped taking her anti-depressant medication and her symptoms had increased. AR 18, 246-48, 266, 272-304. After taking Celexa again, her mental state improved and stabilized. AR 18, 253. When Marshall was released on August 30, 2007, she said she felt better with medication, denied suicidal ideation, and promised to attend outpatient follow-up care. AR 17, 274.

---

[2] The Commissioner also claims the ALJ's finding is supported by Marshall's ability to continue working part-time after the alleged onset date. JS 14. However, this court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). A court "may not affirm the ALJ on a ground upon which he did not rely." *Orn,* 495 F.3d at 630. The ALJ did not appear to rely on Marshall's ability to work part-time, and this court does not consider it.

5

The ALJ relied on psychiatric evaluations of Marshall in December 2007 and July 2008. AR 17-18. During an examination on December 20, 2007, Marshall's speech, intellectual functioning, memory, concentration, calculation, insight, and judgement were all within normal limits. AR 17, 229. Marshall was animated and very pleasant with good eye contact and good interpersonal contact. AR 17, 228. Her thought process was coherent and organized, and her thought content was relevant and non-delusional. AR 228. Dr. Smith opined that Marshall's complaints of depression appeared to be situational as they were related to the stressful environment at home where Marshall takes care of her elderly parents. AR 225, 230. She further opined that "at most [Marshall] may be mildly impaired" in her ability to interact appropriately with supervisors, co-workers, and the public. AR 230. She diagnosed Marshall with a mood disorder and marijuana abuse, and assessed a GAF score of 64.[3] *Id.* Dr. Rodriguez's examination of Marshall on July 27, 2008 revealed similar results. AR 252-57. Dr. Rodriguez noted that Marshall had been laid off from her job, lost a relationship, had to move in with her parents, and experienced the death of her pet. AR 253. He gave Marshall a GAF score of 70 and opined that she had no functional limitations due to any mental impairments. AR 256-57.

With respect to Marshall's physical health, the ALJ acknowledged that in September 2007 Marshall was taken to an emergency room with complaints of chest pain. AR 208. Tests revealed normal lung and heart function. AR 15, 208, 288. Marshall's chest pain was deemed non-cardiac in origin and due to stress over a family argument. AR 208, 283. The ALJ reviewed the other treatment records, which revealed normal results except for obesity. AR 15, 311-12, 327.

---

[3] A GAF score of 61 to 70 indicates "some mild symptoms, such as depressed mood and mild insomnia, or some difficulty in social occupational, or school function, such as occasional truancy or theft within the household, but generally functioning pretty well, and has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders (4th ed. 2000) at 34.

6

There were "no signs of physical distress." AR 15, 327. During a check-up in January 2008, the results of Marshall's physical examination were normal. AR 16, 247. By February 2009, Marshall's testing was essentially normal and she had lost 29 pounds. AR 16, 290, 295.

The ALJ also relied upon the reports of examining physicians. In December 2007, Dr. Girgis examined Marshall and found her heart, lungs, motor strength, sensation, and reflexes were normal. AR 15, 221-22. Her range of motion was full, she had good tone with good active motion, and her strength was 5/5 without motor deficits. AR 223. Dr. Girgis concluded Marshall could perform a full range of medium exertion.[4] AR 15, 223. In January 2010, Dr. Eriks examined Marshall and found a mild sensation decrease in Marshall's feet. AR 16, 338-40. Otherwise, the examination findings were essentially normal except for grip strength due to "minimal effort" by Marshall. AR 16, 338. Dr. Eriks opined that Marshall could perform medium work. *Id.*

The ALJ's reliance on inconsistency with the objective medical evidence is supported by substantial evidence.

### 2. Conservative Treatment

"[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). The ALJ noted that Marshall was stable with medications. AR 18. Marshall reported that her medication was helpful in controlling her symptoms. AR 17, 253, 257, 274. As discussed above, she became depressed and suicidal during a three-week period when she stopped taking her medication. AR 18, 246-48, 253, 257, 266, 274. After resuming medication, her condition stabilized. AR 17, 253. The ALJ further noted that Marshall's physical ailments were treated conservatively with

---

[4] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighting up to 25 pounds." 20 C.F.R. § 416.967(c).

medication. AR 18. The ALJ's reliance on conservative treatment is supported by substantial evidence.

### 3. Daily Activities

An ALJ may consider the claimant's daily activities as one of many factors in weighing a claimant's credibility. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ found that Marshall's neuropathy was mild in degree with mild sensory changes. AR 18. The ALJ noted that during Dr. Smith's evaluation on December 20, 2007, Marshall reported she did household chores, prepared easy food, performed personal grooming, drove a car, picked up fast food, went to a dog park, watched television, handled bills and cash, left home alone, got along fairly with other people, and cared for her parents. AR 17, 227-28. Marshall reported similar daily activities during her examination with Dr. Rodriguez in July 2008 and Dr. Eriks in January 2010. AR 18, 254, 338. The ALJ concluded that Marshall's activities were "inconsistent with the presence of an incapacitating or debilitating medical condition" as described by Marshall.[5] AR 14, 18.

### 4. Conclusion

The ALJ provided clear and convincing reasons, supported by substantial evidence, for finding Marshall's statements and testimony not credible to the extent they were inconsistent with her RFC. "If the ALJ's credibility finding is

---

[5] Even assuming error in one finding, remand would not automatically result. In *Carmickle v. Comm'r of the Soc. Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008), the Ninth Circuit concluded that two of the ALJ's reasons for making an adverse credibility finding were invalid. The court held that when an ALJ provides specific reasons for discounting the claimant's credibility, the question is whether the ALJ's decision remains legally valid, despite such error, based on the ALJ's "remaining reasoning *and ultimate credibility determination*." *Id.* at 1162 (italics in original); *see Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) ("in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied, there was substantial evidence supporting the ALJ's decision"). Here, the ALJ's credibility assessment would remain valid given the objective medical evidence and conservative treatment.

supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

### D. Lay Witness Opinion

Marshall asserts the ALJ erred in failing to consider properly the lay witness report from her father. "When an ALJ discounts the testimony of lay witnesses, 'he [or she] must give reasons that are germane to each witness.'" *Valentine v. Comm'r, Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (citation omitted).

The ALJ discounted Mr. Marshall's report because: (1) as Marshall's father, he was an interested third party; (2) he had a financial interest in Marshall obtaining benefits; and (3) his opinion was inconsistent with the medical evidence in the record. AR 19.

"[R]egardless of whether they are interested parties, 'friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to [his or] her condition.'" *Valentine*, 574 F.3d at 694 (citation omitted); *see also Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999) ("testimony from lay witnesses who see the claimant everyday is of particular value[;] . . . such lay witnesses will often be family members.") (citation and quotation marks omitted). The ALJ improperly discounted Mr. Marshall's opinion because "by virtue of the relationship as [Marshall's] father, he cannot be considered a disinterested third party witness." AR 19.

On the other hand, evidence that a lay witness "exaggerated a claimant's symptoms *in order* to get access to his disability benefits, as opposed to being an 'interested party' in the abstract, might suffice to reject that spouse's testimony." *Valentine*, 574 F.3d at 694 (emphasis in original). The ALJ noted Mr. Marshall had "a motive for secondary gain as he is supporting [Marshall] by providing room and board." AR 19.

9

Finally, the ALJ discounted Mr. Marshall's opinion because, like his daughter's testimony, it was inconsistent with the objective medical evidence. AR 19. Inconsistency with medical evidence is a germane reason to discount lay witness statements. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) ("One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence.").

As discussed earlier, the ALJ gave clear and convincing reasons for finding Marshall's statements not credible. Given that her father's report was similar to her statements in that it was inconsistent with the medical evidence, "it follows that the ALJ also gave germane reasons for rejecting [the father's] testimony." *Valentine*, 574 F.3d at 694. The ALJ did not err.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: September 29, 2011

ALICIA G. ROSENBERG
United States Magistrate Judge